ESTELLE SINGLETARY, on behalf          )
of N.M.M., a minor child,               )
                                        )
        Plaintiff,                      )
                                        )    ORDER AND MEMORANDUM
        v.                              )    AND RECOMMENDATION
                                        )
CUMBERLAND COUNTY SCHOOLS,              )
                                        )
        Defendant.                      )

This matter comes before the court on the following motions: (1) *Motion to Dismiss and Response to Second Amended Complaint by Defendant Cumberland County Schools* [DE-57], (2) Plaintiff's *Motion for Protective Order* [DE-54], and (3) *First Motion to Compel Discovery by Defendant Cumberland County Schools* [DE-59]. All responsive briefing is complete and the matters are ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore, Defendant's motion to dismiss is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). The remaining motions have been referred for disposition in accordance with 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, Plaintiff's motion for protective order [DE-54] and Defendant's motion to compel discovery [DE-59] are denied without prejudice, and it is recommended that Defendant's motion to dismiss [DE-57] be granted in part and denied in part.

## STATEMENT OF THE CASE

On November 14, 2012, Plaintiff Estelle Singletary ("Plaintiff" or "Singletary"), proceeding *pro se* and on behalf of her minor daughter, N.M.M., filed her original complaint in this court

alleging civil rights violations in the education of N.M.M. [DE-1]. Defendant Cumberland County Schools ("Defendant" or "CCS") moved to dismiss Plaintiff's complaint on December 19, 2012, pursuant to Fed. R. Civ. P. 12(b)(6) and (b)(1), in lieu of filing an answer. [DE-5, -6]. Thereafter, on January 15, 2013, Plaintiff filed a motion to amend her complaint along with a proposed amended complaint ("First Amended Complaint"). [DE-12, -12-1]. That same day, Plaintiff filed a motion to join claims. [DE-13].

On August 30, 2013, the court denied Plaintiff's motion to amend her complaint as to her purported claims of discrimination under the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 after finding that such claims were futile and would not survive a motion to dismiss, but allowed Plaintiff to amend her complaint regarding her allegations of violation of the Individuals with Disabilities Education Act ("IDEA") and retaliation under section 504 of the Rehabilitation Act. [DE-17] at 17-18. The court denied without prejudice Plaintiff's motion for joinder. *Id.* Plaintiff's First Amended Complaint was filed by the clerk on August 30, 2013. [DE-18]. The court recommended that the district court deny Defendant's motion to dismiss Plaintiff's original complaint as moot after allowing in part the motion to amend. [DE-17] at 18. The district court subsequently adopted the memorandum and recommendation denying as moot the motion to dismiss. [DE-19].

On September 11, 2013, Defendant filed a motion for a more definite statement as to Plaintiff's retaliation claim under section 504 of the Rehabilitation Act. [DE-20] at 1. Plaintiff did not respond to the motion for a more definite statement, but instead filed a motion to join claims on September 17, 2013. [DE-22]. On November 26, 2013, the court denied both Defendant's motion

2

Case 5:12-cv-00744-FL   Document 85   Filed 01/09/15   Page 2 of 24

for a more definite statement and Plaintiff's motion to join claims. [DE-27]. Also on November 26, 2013, Defendant filed a response to Plaintiff's First Amended Complaint. [DE-29].

On December 10, 2013, Plaintiff moved to file a Second Amended Complaint [DE-32]. Defendant opposed Plaintiff's motion primarily on the basis that the claims Plaintiff sought to add arose out of subsequent administrative proceedings which had not been timely appealed to this court, and accordingly, Plaintiff had failed to exhaust her administrative remedies. [DE-33] at 1-2. On December 27, 2013, the parties filed separate Rule 26(f) reports. [DE-33, -34]. After an in-person status conference with Plaintiff and counsel for Defendant on February 18, 2014, [DE-44], the court entered a case management order [DE-45] and an order governing the procedure for receipt of the administrative record [DE-46]. The order directed the North Carolina Department of Public Instruction to certify and transmit the official record of the administrative proceedings to the Clerk of Court. [DE-46]. The order further directed Defendant's counsel to file the administrative record electronically using the Case Management/Electronic Case Filing system ("CM/ECF") after the administrative record had been transmitted to the Clerk of Court. *Id.*

On March 14, 2014, the court entered an order allowing Plaintiff's Motion to file a Second Amended Complaint [DE-48]. While the court acknowledged Defendant's objections related to exhaustion of administrative remedies, it noted that "Defendant's arguments opposing amendment rely heavily on the contents of the administrative record which has not been filed with the court." [DE-48] at 5. Accordingly, the court granted the motion to amend "to allow for efficient case management because all of Plaintiff's allegations will be cabined into a single document." *Id.* Plaintiff's second amended complaint was filed by the clerk of court on March 14, 2014 and alleges generally that Plaintiff was not made an active participant in developing N.M.M.'s IEP, that N.M.M.

3

did not receive an individualized IEP, that N.M.M.'s IEP goals were not being properly carried out, and that CCS retaliated against N.M.M. by refusing to modify the "stay-put"[1] and change N.M.M.'s classroom placement. [DE-49] at 6.

A dispute developed over Defendant's discovery requests seeking N.M.M.'s private medical records. On April 8, 2014, Plaintiff filed a motion in limine to exclude those medical records from trial. [DE-53]. Plaintiff also filed a motion for protective order on April 8, 2014, seeking to excuse Plaintiff from complying with Defendant's discovery requests, [DE-54], and Defendant filed a motion to compel Plaintiff's compliance with those discovery requests on April 16, 2014 [DE-59]. In an order dated August 18, 2014, the court denied Plaintiff's motion in limine without prejudice as prematurely filed and stayed ruling on the motion for protective order and the motion to compel until the court ruled on the pending motion to dismiss. [DE-79] at 3.

Thereafter, on April 25, 2014, Defendant's counsel filed a record of the administrative proceedings before the North Carolina Office of Administrative Hearings in case number 12 EDC 03259 (the "First Administrative Case"). The administrative record included the transcript from Plaintiff's hearing before an Administrative Law Judge ("ALJ"), [DE-65-68], Plaintiff's admitted exhibits at the administrative hearing, [DE-69], the ALJ's decision, [DE-70], the State Hearing Review Officer's decision, [DE-71], the Office of Administrative Hearings Case File, [DE-72, -73], the State Hearing Review Officer's case file, [DE-74], the North Carolina Department of Public Instruction's transmittal materials, [DE-75], and an index to the administrative record [DE-76].

---

[1] Both the IDEA and North Carolina's implementing regulations provide that while due process proceedings are taking place, the child must remain in the "then-current educational placement," unless both the school district and the parents agree otherwise. 20 U.S.C. § 1415 (j); N.C. Gen. Stat. § 115C-109.9(e). This is commonly known as the "stay-put" under IDEA.

4

## FACTUAL BACKGROUND[2]

At all relevant times, N.M.M. was a minor child with Schizencephaly and spastic quadriplegic cerebral palsy. Pl.'s Second Am. Compl. ("Second Am. Compl.") [DE-49] at 1-2, 6. N.M.M.'s first Individualized Education Plan ("IEP") with CCS was created at a meeting held on June 22, 2011.[3] *Id.* at 3. Plaintiff was unsatisfied with this IEP and filed a due process action against CCS, and the parties held a resolution meeting on June 29, 2011. *Id.* at 2. The parties reached a resolution agreement, which resolved Plaintiff's due process action and provided for increased therapy services for N.M.M. and an extra assistant for N.M.M.'s class for part of the school day. *Id.* At a subsequent IEP meeting held on September 29, 2011, the classroom assistant was changed to a one-on-one assistant for N.M.M. for the entire school day. *Id.* at 3. Plaintiff inquired about a bicycle for N.M.M. at the September 29, 2011 IEP meeting and requested increased services. *Id.* Plaintiff's request for increased services was denied. *Id.*

### 1. First Administrative Case

Two additional IEP meetings were held during the 2011-2012 school year, in February and March, before Plaintiff filed the due process complaint that began the instant lawsuit. *Id.* At an IEP meeting held on February 2, 2012, Plaintiff again requested increased services and was denied and "was still waiting on the response about a [bicycle]." *Id.* At an IEP meeting held on March 22, 2012, Plaintiff was denied increased services and "was informed her child could not ride a bike and 'it wasn't worth a fight' to teach her." *Id.* On May 3, 2012, Plaintiff filed the due process complaint

---

[2] The factual background is drawn from Plaintiff's Second Amended Complaint [DE-49] and supplemented as needed by the administrative record, [DE-65 through -76], for procedural clarity. For purposes of the motion to dismiss, the complaint is considered in the light most favorable to the plaintiff and all well-pleaded factual allegations are accepted as true. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

[3] Page 2 of Plaintiff's Second Amended Complaint erroneously states that the IEP meeting took place on June 23, 2011.

beginning the First Administrative Case and the instant lawsuit. *Id.*; [DE-72] at 19-27. This due process complaint was assigned the case number 12 EDC 03259 in the North Carolina Office of Administrative Hearings. [DE-72] at 19. On a standardized complaint form, Plaintiff indicated that the due process complaint was based on a dispute regarding N.M.M.'s educational placement in special education or related services under IDEA, N.M.M.'s denial of a free, appropriate, public education ("FAPE"), and other claims. *Id.* These other claims included violations of N.M.M.'s right to an individualized plan, challenges to the amount of physical and speech therapy N.M.M. was receiving, that N.M.M.'s occupational therapy goals were not being carried out appropriately, that N.M.M. received assistive technology that was not approved by the entire team, that N.M.M. was not in the least restrictive environment ("LRE"), that Plaintiff had not received all of N.M.M.'s records, that Plaintiff did not have the right to fully participate as a team member because other team members had voted at an IEP meeting in June 2011, and that CCS did not honor the stay-put that had been in place since December 2010. *Id.* at 19-23.

On May 10, 2012, the parties held a resolution meeting for the due process complaint. Second Am. Compl. at 3. The parties were unable to reach a resolution, and continued to have an IEP meeting after the conclusion of the resolution meeting. *Id.* Plaintiff maintains that she did not agree to the IEP meeting taking place due to the stay-put, but she did remain for the meeting and "gathered the papers at the end." *Id.* The May 10, 2012 IEP included a different classroom setting, or LRE, for N.M.M. from the IEP last discussed at the March 22, 2012 IEP meeting. *Id.*

A due process hearing was held before ALJ Selina Brooks on June 19-20, 2012. *Id.* At the hearing, Plaintiff characterized her dispute as containing two issues: whether Defendant complied with the procedural provisions of IDEA and whether N.M.M.'s IEP was individualized. ALJ Op.

[DE-70] at 3; Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 19-20. At the close of Plaintiff's evidence, the ALJ granted judgment in favor of CCS. [DE-70] at 3. According to Plaintiff, the ALJ erred by failing to admit "critical evidence" related to the June 2011 IEP meeting and penalized Plaintiff "for not turning in evidence on time." Second Am. Compl. at 4. On August 8, 2012, Plaintiff appealed the ALJ's decision to the North Carolina Department of Instruction ("DPI") and a State Hearing Review Officer ("SRO") was appointed to review the ALJ's decision. *Id.*; SRO Case File [DE-74] at 11. On appeal, Plaintiff challenged some of the ALJ's factual findings and alleged that the ALJ was not an impartial hearing officer because the ALJ did not allow Plaintiff to present all of her evidence.[4] [DE-74] at 1-6. On September 5, 2012, the SRO affirmed the ALJ's decision in favor of CCS. [DE-71].

## 2. Second Administrative Case

During the pendency of the due process administrative proceedings in the First Administrative Case, Plaintiff wanted CCS to partially implement the May 10, 2012 IEP by allowing N.M.M. to enter her new classroom setting, but CCS refused to modify the stay-put. Second Am. Compl. at 4. On August 25, 2012, Plaintiff filed a second due process complaint challenging CCS's refusal to modify the stay-put and change N.M.M.'s classroom setting. *Id.* at 5. The North Carolina Office of Administrative Hearings assigned case number 12 EDC 07742 (the "Second Administrative Case") to this complaint. *Id.* The ALJ allowed CCS's motion to dismiss Plaintiff's due process complaint without an administrative hearing, and on November 10, 2012, Plaintiff appealed that decision to the North Carolina DPI. *Id.* While the Second Administrative Case continued on appeal within the North Carolina Office of Administrative Hearings, on November 14,

---

[4] Plaintiff also filed a separate complaint against the ALJ, alleging that the ALJ was not impartial and did not have full knowledge of the IDEA. [DE-74] at 8-9.

2012, Plaintiff brought the present action in this court to obtain review of the SRO's decision in the First Administrative Case. [DE-1]. On March 14, 2014, the court allowed Plaintiff's motion to amend, adding claims arising out of the Second Administrative Case. [DE-48].

Plaintiff's Second Amended Complaint generally contains three groups of claims: (1) claims alleging an IDEA violation where Plaintiff did not have the right to fully participate as an IEP team member because other team members had voted at an IEP meeting in June 2011, (2) claims arising out of the First Administrative Case alleging IDEA violations where N.M.M. did not receive an individualized IEP and N.M.M.'s IEP goals were not being carried out appropriately, and (3) section 504 retaliation claims arising out of the Second Administrative Case Defendant's refusal to change N.M.M.'s stay-put placement. Second Am. Compl. [DE-49]. Defendant has moved to dismiss some of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).[5] [DE-57].

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), a court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff, as the party opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does in fact exist. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

---

[5] The court notes that this case was filed in November 2012, but the administrative record for the First Administrative Case was not filed until April of 2014, after the court held an in-person status conference with the parties and entered an order governing the procedure for receipt of the administrative record. [DE-46]. The administrative record for the Second Administrative Case has yet to be filed with the court. Further, the resolution agreement from the June 2011 resolution meeting between the parties has not been filed with the court. As this case moves forward, both the resolution agreement and the administrative record for the Second Administrative Case will need to be filed with the court without delay in order to resolve this case expeditiously.

8

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 557).

The Supreme Court has also opined that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93(2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 93 (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted). "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). A pro se complaint involving civil rights issues must be liberally construed. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). However, the liberal construction

9

requirement will not permit a district court to ignore a clear failure to allege facts which set forth a claim that is cognizable under federal law. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (holding that the court is not required to "conjure up questions never squarely presented.").

## ANALYSIS

### A. Motion to Dismiss

As an initial matter, the court clarifies which claims are now appropriately before the court. Defendants contend that Plaintiff has failed to exhaust her administrative remedies as to several of her claims, that Plaintiff is seeking monetary damages under the IDEA that this court has already ruled are impermissible, and despite the fact that the court has already disallowed Plaintiff's claims pursuant to the ADA, discrimination claims under the Rehabilitation Act, and claims pursuant to 42 U.S.C. § 1983, Plaintiff's Second Amended Complaint still contains those claims without any new factual allegations. Def.'s Mot. to Dismiss and Resp. to Second Am. Compl. ("Def.'s Mot.") [DE-57] at 1-4. Plaintiff agrees with Defendant's position that the ADA claims, the discrimination claims under the Rehabilitation Act, and the § 1983 claims have been previously disallowed by the court. Pl.'s Resp. to Mot. to Dismiss ("Pl.'s Resp.") [DE-62] at 1. While the undersigned notes that Defendant moves to dismiss these claims out of an abundance of caution, Defendant's motion is unnecessary as these claims (¶¶ 5 & 6 of Plaintiff's Second Am. Compl. p. 8) were never part of Plaintiff's pleadings, [DE-1]. Rather, Plaintiff sought leave from the court to amend her complaint to add these claims in addition to several others. [DE-12]. The court denied Plaintiff's motion to amend the complaint as to (1) the ADA claims, (2) discrimination claims under section 504 of the Rehabilitation Act, and (3) claims pursuant to 42 U.S.C. § 1983. [DE-17]. Thus, these claims are

10

not properly before the court, a point which does not appear to be contested by Plaintiff, and Defendant's motion to dismiss as to these claims is unnecessary. The remainder of Plaintiff's claims and Defendant's asserted grounds for dismissal thereof will be discussed in turn.

### 1. Failure to Exhaust Administrative Remedies as a Bar to Plaintiff's IDEA Claims

Defendant contends that several of Plaintiff's IDEA claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) for failure to exhaust available administrative remedies under the IDEA. Def.'s Mot. at 1-4. These claims allege generally that N.M.M.'s therapists refused to follow the progress measurements contained in her IEP, that N.M.M.'s therapist refused to let her move beyond two choices and one type of switch, that Plaintiff was humiliated when there was a walker for N.M.M. in her classroom on the first day of the 2012-2013 school year, that N.M.M. suffered when her classmates all moved to a typical classroom, that Plaintiff had to provide substitute therapeutic services for N.M.M. since N.M.M. was not receiving appropriate services at school, that in June of 2013 N.M.M. was moved to a different elementary school, and that N.M.M. was placed in an intellectually disabled class under stay-put even though N.M.M.'s most recent IEP required a different classroom setting. Second Am. Compl. at 6-9. Plaintiff counters that she has properly exhausted all administrative remedies. Pl.'s Resp. at 1.

"The IDEA requires all states receiving federal education funds to provide disabled schoolchildren with a 'free appropriate public education' ("FAPE")." *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 319 (4th Cir. 2009) (citing 20 U.S.C. § 1412(a)(1)(A)). "A FAPE 'consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction.'" *Id.* (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982)). "[A] FAPE must

11

be reasonably calculated to confer some educational benefit on a disabled child." *M.M. ex rel. D.M. & E.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 526 (4th Cir. 2002) (citing *Rowley*, 458 U.S. at 207). "Such an educational benefit must be provided to a disabled child in the least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children." *Id.* (citing 20 U.S.C. § 1412(a)(5)(A)).

"The IDEA does not however, require a school district to provide a disabled child with the best possible education." *Id.* (citing *Rowley*, 458 U.S. at 192) (noting that the IDEA provides very little by way of substantive standards in determining whether a child is receiving a FAPE). Further, "once a FAPE is offered, the school district need not offer additional educational services." *Id.* at 526-27 (citing *Matthews v. Davis*, 742 F.2d 825, 830 (4th Cir. 1984)). In other words, "while a state must provide specialized instruction and related services sufficient to confer some educational benefit upon the handicapped child, . . . [IDEA] does not require the furnishing of every special service necessary to maximize each handicapped child's potential." *Id.* at 527 (citing *Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997) (subsequent citation and internal quotations omitted)). While a state need not provide the best education possible under the IDEA, the academic advancement must be more then trivial. *Hall ex rel. Hall v. Vance Cnty. Bd. of Educ.*, 774 F.2d 629, 636 (4th Cir. 1985).

"A school provides a FAPE by developing an IEP [Individualized Education Plan] for each disabled child." *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254, 257 (4th Cir. 2008). "An appropriate IEP must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." *M.M.*, 303 F.3d at 527 (citing

12

20 U.S.C. § 1414(d)(1)(A)). The IEP is prepared by an IEP team, which generally includes the child's parents, regular education teacher, special education teacher, a representative of the local education agency ["LEA"], and, when appropriate, the child herself. 20 U.S.C. § 1414(d)(1)(B). An IEP must ultimately be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. The IDEA requires that the parents or guardian of a handicapped child be permitted to participate in discussion relating to the evaluation and education of the disabled child. 20 U.S.C. § 1415(b). The IDEA also requires that the parents of a disabled child be notified by the school district of any prospective change to their child's IEP. *M.M.*, 303 F.3d 527.

"Congress incorporated [into the IDEA] an elaborate set of what is labeled 'procedural safeguards' to insure the full participation of the parents and proper resolution of substantive disagreements" with respect to the provision of a FAPE. *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985). Those procedural safeguards permit parents to present complaints regarding the provision of a FAPE. 20 U.S.C. § 1415(b)(6)(A). When a parent or guardian objects to the identification, placement, or evaluation of his or her child, the parent or guardian has "a right to an impartial due process hearing," to be conducted by the state education agency as determined by state law, to evaluate the disabled student's IEP. *Gadsby v. Gadsby*, 109 F.3d 940, 944 (4th Cir. 1997); *see also* 20 U.S.C. § 1415(f). At that hearing, the parent has the right to be accompanied by counsel, to present evidence and cross-examine witnesses, and to receive a written record of the hearing and the decision made. 20 U.S.C. § 1415(h)(1)-(4).

North Carolina has a two-tiered administrative review system. *Cone v. Randolph Cnty. Bd. of Educ.*, 657 F. Supp. 2d 667, 670 (M.D.N.C. 2009). The due process hearing is conducted by an

13

ALJ selected by the North Carolina Office of Administrative Hearings. *Id.* "Parties aggrieved by the findings of the ALJ decision may appeal to the State Board of Education, which will assign a State Review Officer ("SRO") knowledgeable about special education to review the ALJ's findings and decision." *Id.* The party dissatisfied with the SRO's decision may file a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). In North Carolina, a plaintiff seeking to appeal the SRO's decision to federal court must file a civil action in federal court within 90 days of the SRO's decision. *Id.*; N.C. Gen. Stat. § 115C-109.9(d). A plaintiff must exhaust her administrative remedies before pursuing a civil action in court. *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, — F.3d —, —, 2014 WL 6783052, at \*2 (4th Cir. 2014); *M.M.*, 303 F.3d at 536 (describing three narrow exceptions to the exhaustion requirement: (1) when pursuing the administrative process would be futile, (2) when the school board failed to inform the parents of their administrative rights, and (3) when pursuing the administrative process would have harmed the child). When parents of a disabled child challenge multiple IEPs in court, they must have exhausted their administrative remedies for each academic year in which an IEP is challenged. *M.M.*, 303 F.3d at 536.

There are two types of violations under the IDEA – procedural violations and substantive violations. Substantive violations occur when there is a deficiency in what the school system offers as services for the child, thereby preventing the child from receiving a FAPE. *See A.R. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 n.7 (4th Cir. 2007). The denial of a parent's "opportunity to participate meaningfully" in the creation of the child's IEP is a procedural violation of the IDEA. *Knable ex rel. Knable v. Bexlay City Sch. Dist.*, 238 F.3d 755, 767-70 (6th Cir. 2001). However, a procedural violation does not necessarily mean the child failed to receive a FAPE and that relief under the IDEA is warranted. *DiBuo ex rel. DiBuo v. Bd. of Educ. of Worcester Cnty.*, 309

14

F.3d 184, 190 (4th Cir. 2002). Therefore, if a procedural defect exists, the court must "assess whether it resulted in the loss of an educational opportunity for the disabled child, or whether, on the other hand, it was a mere technical contravention of the IDEA." *M.M.*, 303 F.3d at 533-34 (citing *Gadsby*, 109 F.3d at 956). A school district meets its obligations under the IDEA "if a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA." *Id.* at 534 (citing *Burke Cnty. Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990)). In determining whether the child received a FAPE consistent with the IDEA, the court must review the administrative record as the finder of fact and show deference to findings of the state administrative agency. *See Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 385 (4th Cir. 2000). Specifically, "the IDEA requires that a reviewing court (1) receive the record of the administrative proceeding, (2) hear additional evidence at the request of a party, and (3) base its decision on the preponderance of the evidence." *E.L.*, 2014 WL 6783052, at \*5 (citing 20 U.S.C. § 1415(i)(2)(C)); *but see Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 475-76 (4th Cir. 2009) (discussing the Fourth Circuit's narrow approach to admitting "additional evidence" under the IDEA) (citing *Springer v. Fairfax Cty. Sch. Bd.*, 134 F.3d 659 (4th Cir. 1998)).

### i. *Claim Paragraph Two*[6]

Plaintiff's second claim paragraph states that N.M.M.'s IEP was not individualized, as her goals were pre-written and team members voted at an IEP meeting, that ALJ Brooks would not allow evidence about the voting to be entered at the administrative hearing, that N.M.M.'s therapists refused to follow the progress measurements in N.M.M.'s IEP, and that Plaintiff was told to read the

---

[6] The causes of action purportedly asserted by Plaintiff are not clearly delineated within her complaint; rather the numbered paragraphs in the complaint each contain several allegations. Accordingly, the undersigned addresses them as claim paragraphs, instead of as individual claims.

15

therapy records when she tried to speak to N.M.M.'s therapists about N.M.M.'s progress. Second Am. Compl. at 6 ¶ 2. Defendant argues that by stating the IEP "contained specific numbers to measure progress, and all the therapist[s] refused to follow this," Plaintiff is raising an implementation issue that was not administratively exhausted below in the state proceedings. Def.'s Mot. at 2. Plaintiff responds that this claim was properly raised and exhausted in the due process administrative proceedings. Pl.'s Resp. at 1.

Plaintiff identified two issues at the beginning of the hearing in the First Administrative Case: whether Defendant complied with IDEA's procedural safeguards and whether N.M.M.'s IEP was individualized. Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 19-20. Defendant argues that only these two issues were administratively exhausted. Def.'s Mot. at 1. This argument, however, ignores the evidence actually presented below at the administrative hearing. The transcripts of the administrative due process hearing show that Plaintiff elicited testimony from several witnesses about whether N.M.M.'s therapists were following the progress measurements contained in N.M.M.'s IEP. Specifically, Plaintiff was concerned that the progress measurements for N.M.M.'s IEP goals were described out of a certain number of trials for each activity, but the therapists did not consistently have N.M.M. perform the activities the prescribed number of times during her treatment sessions. *See* Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 86-97 (testimony of N.M.M.'s occupational therapist as to how she measured N.M.M.'s progress with her occupational therapy goals); Hr'g Tr. Vol. 2 Pt. 1 [DE-67] at 20-23 (testimony of N.M.M's speech therapist as to how she measured N.M.M.'s progress with her speech goals). Accordingly, the undersigned determines that Plaintiff raised this issue below and properly exhausted the administrative process. Therefore, the undersigned recommends that Defendant's motion to dismiss Plaintiff's second claim paragraph as to the implementation claim

16

be denied.

### ii. Claim Paragraph Three

Plaintiff's third claim paragraph states that N.M.M. was entitled to assistive technology such as a bike, a communication device, and a walker, that Plaintiff was belittled when Defendant said N.M.M. was not ready for a walker, could not lift her leg, that it was not worth a fight to teach N.M.M. to ride a bicycle, and that N.M.M.'s therapist refused to let her move beyond two choices and a single type of switch. Second Am. Compl. at 7 ¶ 3. Defendant alleges that to the extent this claim states that "the speech therapist refused to let [N.M.M.] move beyond two choices and a single [type of] switch," Plaintiff is raising an implementation issue that was not administratively exhausted in the state proceedings. Def.'s Mot. at 3. Plaintiff responds that this claim was raised in the due process administrative proceedings. Pl.'s Resp. at 1.

Again, Defendant's argument misstates the evidence presented at the administrative due process hearing. Plaintiff elicited testimony from N.M.M.'s treatment providers as to what N.M.M. would have needed to show for the therapists to recommend new goals and activities for her. *See* Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 130-36 (Plaintiff questions N.M.M.'s occupational therapist about different switches N.M.M. used during therapy and why the therapist chose those different switches); Hr'g Tr. Vol. 2 Pt. 1 [DE-67] at 15-29 (Plaintiff questions N.M.M.'s speech therapist about N.M.M.'s performance on her speech therapy goals and what N.M.M. would have needed to show for those goals to have been changed). Accordingly, the undersigned determines that Plaintiff raised this issue below and properly exhausted the administrative process. Therefore, the undersigned recommends that Defendant's motion to dismiss Plaintiff's third claim paragraph as to the implementation claim be denied.

17

### *iii. Claim Paragraph Eight*

Plaintiff's eighth claim paragraph states that Plaintiff was humiliated when CCS placed a walker for N.M.M. in her classroom at the beginning of the 2012-2013 school year, and that N.M.M. suffered when her classmates were moved to another class and N.M.M. was left behind. Second Am. Compl. at 9 ¶ 8. Defendant alleges that Plaintiff has failed to exhaust her administrative remedies as these issues were not raised in the administrative proceeding below. Def.'s Mot. at 3. Defendant further clarifies that the due process action was filed in May 2012, and thus any action by the school district for the Fall 2012 school year could not be part of that due process action. *Id.* Plaintiff responds that this claim "was part of the new amended petition, adding the claims from the [Second Administrative Case]. This claim was further retaliation from the first due process." Pl.'s Resp. at 2.

The administrative record filed with the court, [DE-65 through -76], reflects only the First Administrative Case (12 EDC 03259). The issue regarding the walker in N.M.M.'s classroom for the 2012-2013 school year was not raised in the First Administrative Case. While the administrative record from the Second Administrative Case (12 EDC 07742) has not been filed with the court, the due process complaint from the Second Administrative Case was previously filed with the court, [DE-24] Ex. C.[7] According to the standardized due process complaint form completed by Plaintiff in the Second Administrative Case, Plaintiff raises only one issue: CCS's refusal to lift the stay-put

---

[7] Plaintiff acknowledges that the administrative record for the Second Administrative Case has not been filed with the court, and asks that Defendant's counsel be responsible for retrieving the administrative record. Pl.'s Resp. at 2-3. To the extent that Plaintiff's claims arising out of the Second Administrative Case survive and go forward in this case, the administrative record will need to be retrieved.

placement and allow N.M.M. to enter a different classroom placement.[8] *Id.* The narrative section of the due process complaint only addresses this issue, and does not include any allegations regarding a walker. *Id.* Accordingly, the undersigned determines that the issue regarding the walker was not administratively exhausted in either due process proceeding below. As such, the undersigned recommends that Defendant's motion to dismiss as to the IDEA claim stemming from the walker be allowed.

As to Plaintiff's retaliation claim arising from N.M.M.'s peers moving to another class, Plaintiff alleges that the retaliation claim is fully exhausted and is properly before the federal court.[9] Pl.'s Resp. at 1. Construing Plaintiff's complaint liberally, paragraphs seven, eight, and ten through fourteen together comprise the section 504 retaliation claim that was the subject of the Second Administrative Case. Defendant does not move to dismiss the retaliation claim as a whole; accordingly, as paragraph eight is part of this larger retaliation claim, the undersigned recommends

---

[8] Additionally, Plaintiff describes the Second Administrative Case in the second amended complaint: "[a] due process was filed on August 25, 2012 for failure to agree on changing the LRE for the benefit of the child." Second Am. Compl. at 5 ¶ 27.

[9] There may be a jurisdictional issue with Plaintiff's retaliation claims (Second Am. Compl. ¶¶ 7-8 & 10-14) arising out of the Second Administrative Case. This issue is undefined and the court is unable to address the issue within the current posture of the case. In essence, the Second Administrative Case alleges a section 504 retaliation claim. After the SRO issued a decision in that case on November 28, 2012, Plaintiff had 90 days to file an action in federal court pursuant to 20 U.S.C. § 1415(i)(2)(A) and N.C. Gen. Stat. § 115C-109.9(d). Plaintiff first filed a motion to join these claims arising out of the Second Administrative Case on January 15, 2013 [DE-13], within the 90-day period. Plaintiff also filed a motion to amend the complaint on January 15, 2013, to include a section 504 retaliation claim [DE-12]. The court denied the motion to join claims without prejudice, but allowed Plaintiff's motion to amend the complaint as to the section 504 retaliation claim [DE-17]. Plaintiff again moved to join the claims arising out of the Second Administrative Case on September 17, 2013, [DE-22] and the court denied the motion without prejudice for the Plaintiff to refile her request as a motion to amend the complaint pursuant to Fed. R. Civ. P. 15 [DE-27]. Subsequently, on December 10, 2012, Plaintiff filed a motion to amend the complaint [DE-32], which the court allowed on March 14, 2014 [DE-48], largely because Defendant's arguments opposing amendment rested on the contents of the administrative record, which had not yet been filed with the court. The undersigned notes, without deciding, that Plaintiff's successful motion to amend her complaint to add the section 504 retaliation claim filed within the 90-day statutory period arguably gives the court jurisdiction over the merits of that claim, even though the motion to amend to add ¶¶ 10-14, which make up the majority of the retaliation claim, was not filed until December 10, 2013. There is a potential relation-back issue which may need to be addressed by the parties as the case proceeds.

that Defendant's motion to dismiss claim paragraph eight for failure to exhaust administrative remedies as to the retaliation claim be denied.

### iv. *Claim Paragraph Nine*

Plaintiff's ninth claim paragraph states that Plaintiff had to perform replacement therapeutic services for N.M.M. as N.M.M. was not receiving appropriate treatment at school. Second Am. Compl. at 9 ¶ 9. Defendant alleges that Plaintiff has failed to exhaust her administrative remedies, as this is an implementation issue that was not raised in the administrative proceeding below. Def.'s Mot. at 3. Plaintiff responds that she "did in fact have to work extra every day to make sure that the child would not regress as much as possible." Pl.'s Resp. at 2.

A review of the administrative record, [DE-65 through -76], shows that the issue of Plaintiff providing substitute therapeutic services for N.M.M. on a daily basis due to N.M.M. not receiving appropriate services at school was never raised in the First Administrative Case. Plaintiff makes no argument that this issue was presented in the Second Administrative Case. Accordingly, the undersigned recommends that Defendant's motion to dismiss claim paragraph nine be allowed.

### v. *Claim Paragraph Thirteen*

Claim paragraph thirteen states that on "June 7, 2013, the child was removed from the placement of Cliffdale Elementary to Montclair by the county." Second Am. Compl. at 9 ¶ 13. Defendant moves to dismiss claim paragraph thirteen for failure to exhaust administrative remedies. Def.'s Mot. at 3. Further, as to claim paragraph thirteen, Defendant argues that "[t]his paragraph makes a factual allegation but fails to state how it constitutes a violation of applicable law." *Id.* Reviewing the administrative record for the First Administrative Case, this claim was not raised during the administrative proceedings. Further, Plaintiff's complaint states that the Second

20

Administrative Case was filed on August 25, 2012. Second Am. Compl. at 5 ¶¶ 27 & 35. Accordingly, any action taking place in June of 2013 could not have been the subject of the Second Administrative Case, and the undersigned determines that Plaintiff has failed to exhaust administrative remedies as to claim paragraph thirteen. The undersigned thus recommends that Defendant's motion to dismiss as to claim paragraph thirteen be allowed.

## vi. Claim Paragraph Fourteen

Claim paragraph fourteen states that "[t]he child was placed in an intellectually disabled class under stay-put, even though the last IEP written said regular class, violating stay-put." Second Am. Compl. at 9 ¶ 14. Defendant moves to dismiss claim paragraph fourteen for failure to exhaust administrative remedies. Def.'s Mot. at 3. Reviewing the administrative record below for the First Administrative Case, the undersigned determines that claim was not raised during the administrative proceedings. Plaintiff's due process complaint for the Second Administrative Case also does not contain any allegations that N.M.M. was placed in an intellectually disabled class in violation of the stay-put. [DE-24] Ex. C. Additionally, reading claim paragraphs thirteen and fourteen together, if the event in claim paragraph fourteen also took place in June of 2013, it could not have been administratively exhausted in either of Plaintiff's due process actions, which were both filed in 2012. Accordingly, the undersigned recommends that Defendant's motion to dismiss paragraphs fourteen for lack of administrative exhaustion be allowed.

## 2. Claims for Monetary Damages under IDEA

Defendant argues that Plaintiff seeks monetary damages, [DE-49] at 11-12, that this court has already ruled are inappropriate. Def.'s Mot. at 4. Plaintiff responds that she seeks all damages under section 504 retaliation, which allows for monetary damages, as opposed to the IDEA. Pl.'s

21

Resp. at 3.

Plaintiff's original complaint, [DE-1], sought compensatory damages for "all services rendered to the child in replacement of the lack of services provide[d] by [Defendant]." [DE-1] at 9. When Plaintiff first moved to amend the complaint, her motion was allowed as to her IDEA claims to the extent that she sought appropriate (injunctive) relief, but denied to the extent that she sought monetary damages. [DE-17] at 12. Further, the undersigned recommended above that Plaintiff's claim for compensatory services under the IDEA (Second Am. Compl. at 9 ¶ 9) be dismissed above for failure to exhaust administrative remedies. Accordingly, the undersigned recommends that Defendant's motion to dismiss Plaintiff's requested resolution of compensation for therapeutic services provided to N.M.M. also be allowed.

## B. Discovery Motions

On April 8, 2014, Plaintiff filed a motion for protective order to excuse her compliance with Defendant's discovery requests seeking N.M.M.'s medical records. [DE-54]. Plaintiff alleges that the discovery sought by Defendant would be burdensome as it would be expensive to reproduce N.M.M.'s medical records, that the medical records are not relevant to whether N.M.M. received a FAPE from Defendant, and that Defendant is essentially harassing Plaintiff with these discovery requests, as the time, money, and effort involved in seeking these documents would be excessive. *Id.* at 1-4. Defendant filed a motion to compel N.M.M.'s medical records on April 16, 2014, alleging that the medical records were relevant as to whether N.M.M. received compensatory therapy and whether N.M.M. regressed during the period at issue. [DE-59]. On April 24, 2014, Plaintiff filed a response in opposition to Defendant's motion to compel, [DE-64], and on May 9, 2014, Plaintiff filed a reply to Defendant's response regarding Plaintiff's motion for protective order, [DE-78].

22

These filings largely repeat Plaintiff's arguments as stated in the motion for protective order.

Defendant's first argument in support of the motion to compel concerns Plaintiff's requested relief seeking compensation for replacement therapeutic services that Plaintiff provided to N.M.M.–a claim that the undersigned is recommending be dismissed. Defendant also argues that the medical records are relevant to determine whether N.M.M. regressed during the time period at issue. However, this argument is unpersuasive at this point given that Plaintiff's surviving claims concern (1) whether N.M.M.'s IEP was properly carried out as written, (2) whether Defendant complied with the IDEA's procedural provisions, and (3) whether Defendant retaliated against Plaintiff by refusing to lift the stay-put and let N.M.M. enter her new LRE.

Fed. R. Civ. P. 26(b)(2)(C)(iii) requires the court to limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Given that the undersigned is recommending dismissal of Plaintiff's requested compensation for therapeutic services provided and that Defendant claims N.M.M.'s medical records are relevant to that claim, and given the nature of the surviving claims at this point in the case, Defendant's motion to compel and Plaintiff's motion for protective order are both denied without prejudice.

## CONCLUSION

For the foregoing reasons,

1. It is recommended that Defendant's motion to dismiss [DE-57] is ALLOWED as to claim paragraph eight as to the walker claim, claim paragraph nine, claim paragraph thirteen, claim paragraph fourteen, and Plaintiff's requested resolution of compensation for therapeutic services;

2. It is recommended Defendant's motion to dismiss is DENIED as to claim paragraph two,

23

claim paragraph three, and claim paragraph eight as to the rehabilitation claim; and

3. Plaintiff's motion for protective order [DE-54] and Defendant's motion to compel [DE-57] are both denied without prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED and ORDERED, this the 8th day of January 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

Case 5:12-cv-00744-FL   Document 85   Filed 01/09/15   Page 24 of 24