IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-744-FL

ESTELLE SINGLETARY, on behalf )
of N.M.M., a minor child, )
)
Plaintiff, )
) ORDER AND MEMORANDUM
v. ) AND RECOMMENDATION
)
CUMBERLAND COUNTY SCHOOLS, )
)
Defendant. )

This matter comes before the court on the following motions: (1) Defendant's Motion for

Summary Judgment [DE-92]; (2) Plaintiff's Motion to Amend Complaint [DE-96]; and Defendant's

Motion to Strike [DE-98]. All responsive briefing is complete and the matters are ripe for

disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore,

Defendant's motion for summary judgment is considered here as a recommendation to the District

Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). The remaining motions

have been referred for disposition in accordance with 28 U.S.C. § 636(b)(1)(A). For the reasons set

forth below, Defendant's motion to strike and Plaintiff's motion to amend are denied, and it is

recommended that Defendant's motion for summary judgment be granted.

## STATEMENT OF THE CASE

On November 14, 2012, Plaintiff Estelle Singletary ("Plaintiff" or "Singletary"), proceeding

*pro se* and on behalf of her minor daughter, N.M.M., filed her original complaint in this court

alleging civil rights violations in the education of N.M.M. [DE-1]. Defendant Cumberland County

Schools ("Defendant" or "CCS") moved to dismiss Plaintiff's complaint on December 19, 2012,

pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), in lieu of filing an answer. [DE-5, -6]. Thereafter, on January 15, 2013, Plaintiff filed a motion to amend her complaint along with a proposed amended complaint ("First Amended Complaint"). [DE-12, -12-1]. That same day, Plaintiff filed a motion to join claims. [DE-13].

On August 30, 2013, the court denied Plaintiff's motion to amend her complaint as to her purported claims of discrimination under the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 after finding that such claims were futile and would not survive a motion to dismiss, but allowed Plaintiff to amend her complaint regarding alleged violations of the Individuals with Disabilities Education Act ("IDEA") and retaliation under section 504 of the Rehabilitation Act. [DE-17] at 17-18. The court denied without prejudice Plaintiff's motion for joinder. *Id.* Plaintiff's First Amended Complaint was filed by the clerk on August 30, 2013. [DE-18]. The undersigned recommended that the district court deny Defendant's motion to dismiss Plaintiff's original complaint as moot after allowing in part the motion to amend. [DE-17] at 18. The district court subsequently adopted the memorandum and recommendation denying as moot the motion to dismiss. [DE-19].

On September 11, 2013, Defendant filed a motion for a more definite statement as to Plaintiff's retaliation claim under section 504 of the Rehabilitation Act. [DE-20] at 1. Plaintiff did not respond to the motion for a more definite statement, but instead filed a motion to join claims on September 17, 2013. [DE-22]. On November 26, 2013, the court denied both Defendant's motion for a more definite statement and Plaintiff's motion to join claims [DE-27] and Defendant filed a response to Plaintiff's First Amended Complaint [DE-29].

2

On December 10, 2013, Plaintiff moved to file a Second Amended Complaint. [DE-32]. Defendant opposed Plaintiff's motion primarily on the basis that the claims Plaintiff sought to add arose out of subsequent administrative proceedings which had not been timely appealed to this court, and accordingly, Plaintiff had failed to exhaust her administrative remedies. [DE-33] at 1-2. On December 27, 2013, the parties filed separate Rule 26(f) reports. [DE-33, -34]. After an in-person status conference with Plaintiff and counsel for Defendant on February 18, 2014 [DE-44], the court entered a case management order [DE-45] and an order governing the procedure for receipt of the administrative record [DE-46]. The order directed the North Carolina Department of Public Instruction to certify and transmit the official record of the administrative proceedings to the Clerk of Court. [DE-46]. The order further directed Defendant's counsel to file the administrative record electronically using the Case Management/Electronic Case Filing system ("CM/ECF") after the administrative record had been transmitted to the Clerk of Court. *Id.*

On March 14, 2014, the court entered an order allowing Plaintiff's Motion to file a Second Amended Complaint. [DE-48]. While the court acknowledged Defendant's objections related to exhaustion of administrative remedies, it noted that "Defendant's arguments opposing amendment rely heavily on the contents of the administrative record which has not been filed with the court." [DE-48] at 5. Accordingly, the court granted the motion to amend "to allow for efficient case management because all of Plaintiff's allegations will be cabined into a single document." *Id.* Plaintiff's second amended complaint was filed by the clerk of court on March 14, 2014 and alleges generally that Plaintiff was not made an active participant in developing N.M.M.'s Individualized Education Plan ("IEP"), that N.M.M. did not receive an individualized IEP, that N.M.M.'s IEP goals

3

were not being properly carried out, and that CCS retaliated against N.M.M. by refusing to modify the "stay-put"[1] and change N.M.M.'s classroom placement. [DE-49] at 6.

A dispute developed over Defendant's discovery requests seeking N.M.M.'s private medical records. On April 8, 2014, Plaintiff filed a motion in limine to exclude those medical records from trial. [DE-53]. Plaintiff also filed a motion for protective order on April 8, 2014, seeking to excuse Plaintiff from complying with Defendant's discovery requests [DE-54], and Defendant filed a motion to compel Plaintiff's compliance with those discovery requests on April 16, 2014 [DE-59]. In an order dated August 18, 2014, the court denied Plaintiff's motion in limine without prejudice as prematurely filed and stayed ruling on the motion for protective order and the motion to compel until the court ruled on the pending motion to dismiss. [DE-79] at 3.

On April 25, 2014, Defendant's counsel filed a record of the administrative proceedings before the North Carolina Office of Administrative Hearings in case number 12 EDC 03259 (the "First Administrative Case"). The administrative record included the transcript from Plaintiff's hearing before an Administrative Law Judge ("ALJ") [DE-65 through -68], Plaintiff's admitted exhibits at the administrative hearing [DE-69], the ALJ's Decision [DE-70], the State Hearing Review Officer's ("SRO") Decision [DE-71], the Office of Administrative Hearings Case File [DE-72, -73], the SRO's case file [DE-74], the North Carolina Department of Public Instruction's transmittal materials [DE-75], and an index to the administrative record [DE-76].

On October 2, 2014, the court granted Defendant's request for extension of time to file potentially dispositive motions, suspending the deadline and ordering that it be reestablished after

---

[1] Both the IDEA and North Carolina's implementing regulations provide that while due process proceedings are taking place, the child must remain in the "then-current educational placement," unless both the school district and the parents agree otherwise. 20 U.S.C. § 1415 (j); N.C. Gen. Stat. § 115C-109.9(e). This is commonly known as the "stay-put" under IDEA. .

4

resolution of the pending motion to dismiss and motion to compel discovery. [DE-83]. Thereafter, the court denied without prejudice Plaintiff's motion for protective order and Defendant's motion to compel. [DE-85]. The court granted Defendant's motion to dismiss, determining that Claim Paragraph 10 from the Second Amended Complaint, along with portions of Claim Paragraphs 2 and 3, remained for decision. [DE-89] at 18-19 ("Claim Paragraph 2 raises an evidentiary issue, properly raised and ruled upon by the ALJ" and "Claim Paragraph 3, in addition, contains allegations that plaintiff was humiliated by defendant's refusal to teach N.M.M. to ride an assistive tricycle."). In the same order, the court directed the parties to confer regarding discovery and scheduling deadlines and propose new deadlines for case management. *Id.* at 19-20.

Defendant submitted an individual report containing proposed deadlines going forward. [DE-90]. The court then set a deadline of May 20, 2015, for the filing of any potentially dispositive motions. Apr. 14, 2015 Text Order. Thereafter, Defendant filed the instant motion for summary judgment [DE-92], Plaintiff filed a motion to amend the complaint [DE-96], and Defendant moved to strike parts of Plaintiff's response in opposition to the motion for summary judgment [DE-98].

## **FACTUAL BACKGROUND**[2]

At all relevant times, N.M.M. was a minor child with Schizencephaly and spastic quadriplegic cerebral palsy. ALJ Decision [DE-70] at 3 ¶ 1. N.M.M.'s first IEP with CCS was created at a meeting held on June 22, 2011. *Id.* at 4 ¶ 7. Plaintiff was unsatisfied with this IEP and filed a due process petition against CCS, and the parties held a resolution meeting on June 29, 2011. *Id.* ¶¶ 7-8. In the contested case petition, Plaintiff argued that she was not part of the IEP team and voting was inappropriate when making IEP decisions, and generally challenged the services provided

---

[2] The factual background is drawn mainly from the state administrative record.

for N.M.M . [DE-95-3] at 1-2. The parties reached a resolution agreement, in which Plaintiff agreed to dismiss the due process action with prejudice in exchange for increased therapy services for N.M.M. and an extra assistant for N.M.M.'s class for part of the school day. ALJ Decision [DE-70] at 5 ¶¶ 8, 10; [DE-95-3] at 4-5.

## A.    First Administrative Case

On May 3, 2012, Plaintiff filed the due process complaint beginning the First Administrative Case, which forms the basis of the instant lawsuit. [DE-72] at 19-27. This due process complaint was assigned the case number 12 EDC 03259 in the North Carolina Office of Administrative Hearings. *Id.* at 19. On a standardized complaint form, Plaintiff indicated that the due process complaint was based on a dispute regarding N.M.M.'s educational placement in special education or related services under the IDEA, N.M.M.'s denial of a free, appropriate, public education ("FAPE"), and other claims. *Id.* These other claims included violations of N.M.M.'s right to an individualized plan, challenges to the amount of physical and speech therapy N.M.M. was receiving, that N.M.M.'s occupational therapy goals were not being carried out appropriately, that N.M.M. received assistive technology that was not approved by the entire team, that N.M.M. was not in the least restrictive environment ("LRE"), that Plaintiff had not received all of N.M.M.'s records, that Plaintiff did not have the right to fully participate as a team member because other team members had voted at an IEP meeting in June 2011, and that CCS did not honor the stay-put that had been in place since December 2010. *Id.* at 19-23.

On May 10, 2012, the parties held a resolution meeting for the due process complaint and were unable to reach a resolution. [DE-72] at 107-09. A due process hearing was then held before ALJ Selina Brooks on June 19-20, 2012. ALJ Decision [DE-70] at 1; Hr'g Tr. [DE-65 through -68].

6

At the hearing, Plaintiff characterized her dispute as containing two issues: whether Defendant complied with the procedural provisions of the IDEA and whether N.M.M.'s IEP was individualized. ALJ Decision [DE-70] at 3; Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 19-20. At the hearing, Plaintiff attempted to introduce a recording of the June 22, 2011 IEP meeting. Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 38. The ALJ determined that, because of the resolution agreement dismissing the due process petition with prejudice, "issues relating to the development and appropriateness of the June 2011 IEP were settled and could not be litigated" in the present action. ALJ Decision [DE-70] at 9 ¶¶ 3-4. The ALJ thus did not allow Plaintiff to introduce the recording of the June 22, 2011 IEP meeting and did not allow Plaintiff to elicit testimony about what took place at the June 22, 2011 IEP meeting. Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 38-42.

Joan Sheldon ("Sheldon"), a licensed physical therapist for 37 years who worked with N.M.M. during the 2011-12 school year testified at the administrative hearing. ALJ Decision [DE-70] at 6 ¶ 18; Hr'g Tr. Vol. 1 Pt. 2 [DE-66] at 154. Sheldon testified that, along with Julie Aul, she decided that N.M.M. needed improved head and trunk control before providing an adaptive tricycle[3] would be appropriate. ALJ Decision [DE-70] at 7 ¶ 29; Hr'g Tr. Vol. 1 Pt. 2 [DE-66] at 192-94. Sheldon also testified that N.M.M. was not the only child in her classroom who was not able to ride a tricycle, that the focus of school-based physical therapy was to improve N.M.M.'s positioning for the learning environment, and N.M.M. was not provided with a tricycle because she was not ready for one and because it was not the focus of school-based physical therapy. Hr'g Tr. Vol. 1 Pt. 2 [DE-66] at 193-94. When asked whether N.M.M. could pedal a tricycle, Sheldon responded that "[i]f she could, it probably would be using a lot of tone, tone that we would not want her to use, abnormal

---

[3] The parties and witnesses used "bike" and "tricycle" interchangeably at the hearing, but the undersigned will use tricycle throughout.

7

type of tone." *Id.* at 196. Plaintiff introduced two video clips of N.M.M. on a tricycle at home, and in response to seeing these videos, Sheldon testified that it appeared N.M.M. was strapped into the tricycle, and the video clips showed that N.M.M. was not ready to begin working on riding an adaptive tricycle from a physical therapy standpoint. Plaintiff's Video Number 1; Hr'g Tr. Vol. 1 Pt. 2 [DE-66] at 233-34. Specifically, Sheldon stated that

> I saw that she does not have the head and trunk control to sustain the lower extremity movement and she's using some tone—she's not—she is doing—getting a little bit of active movement, definitely. But she's doing some extension, so it's causing her to slide and tilt even more as she pushes. So she's not able to use her lower extremities while maintaining appropriate alignment in her head and trunk.

Hr'g Tr. Vol. 1 Pt. 2 [DE-66] at 234.

Julie Aul ("Aul"), a licensed physical therapist for 37 years and the director of the exceptional children's department in CCS, also testified at the administrative hearing. Hr'g Tr. Vol. 2 Pt. 1 [DE-67] at 284. Aul testified that at the relevant time, N.M.M. did not have the appropriate head and trunk control in order to be functional on a tricycle. *Id.* at 279. When the issue of the tricycle was discussed at an IEP meeting on March 22, 2012, in her professional opinion as a physical therapist, Aul did not believe that an adaptive tricycle was appropriate for N.M.M. because it would interfere with the progress N.M.M. was making towards dynamic sitting. *Id.* at 284. Both Aul and Sheldon agreed that as of the March 22, 2012 IEP meeting, N.M.M. did not have sufficient head and trunk control to make working on riding an adaptive tricycle an appropriate goal in the educational environment. ALJ Decision [DE-70] at 7 ¶¶ 29, 31.

Zully Howington ("Howington"), a teacher's assistant and one-on-one clasroom aide for N.M.M. testified that she tried to put N.M.M. on an non-adaptive tricycle at one point. Hr'g Tr. Vol. 2 Pt. 1 [DE-67] at 290-91, 301. Along with another teacher's assistant, Howington held N.M.M.'s

8

torso and pushed forward while the other teacher's assistant helped N.M.M. pedal. *Id.* at 301. Plaintiff herself testified that learning to ride a tricycle was part of the Creative Curriculum goals for children to achieve before they leave pre-kindergarten education, and in March 2012, N.M.M. was able to pedal a tricycle for the first time. Hr'g Tr. Vol. 2 Pt. 2 [DE-68] at 335, 341. Plaintiff also testified that N.M.M. had ridden adaptive tricycles at Duke, and that many adaptive tricycles are available, even for children who are unable to sit up or pedal—they can be strapped in and pushed from behind. *Id.* at 341-42, 344. When asked whether Plaintiff had N.M.M.'s providers at Duke provide information about her therapy at Duke to CCS, Plaintiff responded "[w]e never talked about it. They said that—the only thing that was really said is that they worked on different goals there than they did within the school, and because the school says that they are educationally based that they didn't know if it would be the same thing." *Id.* at 354. Ultimately, the ALJ concluded that "[t]he evidence was compelling that, during the 2011-12 school year, [N.M.M.] did not possess the prerequisite head and trunk control to make riding an adaptive tricycle at school an appropriate goal." ALJ Decision [DE-70] at 11 ¶ 17.

At the close of Plaintiff's evidence, the ALJ granted judgment in favor of CCS based on counsel for Defendant's motion for entry of judgment made pursuant to North Carolina Rule of Civil Procedure 41(b), finding that Plaintiff had failed to show any right to relief. *Id.* at 3, 12 ¶ 1. The ALJ entered a written decision on July 20, 2012. ALJ Decision [DE-70] at 1-14. On August 8, 2012, Plaintiff appealed the ALJ's decision to the North Carolina Department of Instruction and a SRO was appointed to review the ALJ's decision. [DE-74] at 11. On appeal, Plaintiff challenged some of the ALJ's factual findings and alleged that the ALJ was not an impartial hearing officer

9

because the ALJ did not allow Plaintiff to present all of her evidence.[4]  [DE-74] at 1-6.  On

September 5, 2012, the SRO affirmed the ALJ's decision in favor of CCS.  SRO Decision [DE-71]

at 1-17.  The SRO found that the ALJ's findings of fact were regularly made and incorporated most

of them into the decision in an abbreviated and consolidated fashion.  *Id.* at 3-4.  Ultimately, having

reviewed the case records and having made independent findings of fact and conclusions of law as

required by the regulations, the SRO affirmed the ALJ's decision that Plaintiff had not met her

burden of showing that CCS had failed to comply with the procedural provisions of the IDEA and

the IEP developed for N.M.M. was individualized and provided a FAPE.  *Id.* at 1-17.

**B.    Second Administrative Case**

During the pendency of the due process administrative proceedings in the First

Administrative Case, Plaintiff wanted CCS to partially implement an IEP developed on May 10,

2012 by allowing N.M.M. to enter a new classroom setting, but CCS refused to modify the stay-put

and Plaintiff initiated a second due process proceeding by filing a contested case petition on August

25, 2012.  [DE-24] at 42-43.  The North Carolina Office of Administrative Hearings assigned the

case number 12 EDC 07742 (the "Second Administrative Case") to this complaint.  *Id.* at 46; [DE-

25-8] at 2.  The ALJ allowed CCS's motion to dismiss Plaintiff's due process complaint without an

administrative hearing on October 23, 2014 and dismissed Plaintiff's due process petition without

prejudice [DE-25-8] at 2, and on November 10, 2012, Plaintiff appealed that decision to the North

Carolina Department of Public Instruction and a SRO was appointed to review the ALJ's decision.

[DE-24] at 46.  The SRO affirmed the dismissal of the Second Administrative Case without

prejudice on November 28, 2012.  *Id.* at 46-51.

---

[4] Plaintiff also filed a separate complaint against the ALJ, alleging that the ALJ was not impartial and did not have full knowledge of the IDEA.  [DE-74] at 8-9.

10

While the Second Administrative Case continued on appeal within the North Carolina Office of Administrative Hearings, on November 14, 2012, Plaintiff brought the present action in this court to obtain review of the SRO's decision in the First Administrative Case. [DE-1]. On March 14, 2014, the court allowed Plaintiff's motion to amend, adding claims arising out of the Second Administrative Case. [DE-48]. Those claims, however, were ultimately dismissed by the court for lack of jurisdiction because the Second Administrative Case was not decided on the merits and accordingly, Plaintiff had not exhausted her administrative remedies as to those claims. *Singletary v. Cumberland Cnty. Schs.*, No. 5:12-CV-744-FL, 2015 WL 1125088, at *10 (E.D.N.C. Mar. 12, 2015) (unpublished) ("Because plaintiff's August 25, 2012, due process complaint was dismissed, she has not been aggrieved by 'findings' or 'decisions' made on the merits of the claims contained within that complaint.").

## ANALYSIS

### A.  Defendant's Motion to Strike [DE-98]

Defendant moves to strike "certain unauthenticated documents and related discussions" from Plaintiff's response to the motion for summary judgment [DE-95] because the documents were not introduced into evidence below during the state administrative proceedings and the documents have not been authenticated. Mot. to Strike [DE-98] at 1. Defendant moves to strike Docket Entries 95-1, -95-3, 95-4, 95-7, -95-8 and the related discussion of those documents. *Id.* at 2. In response, Plaintiff argues that she has the right to bring new evidence and the challenged documents can be authenticated. Pl.'s Resp. [DE-101].

In order to be considered in conjunction with a motion for summary judgment, evidence must be such that it could be provided in admissible form. *See* Fed. R. Civ. P. 56(c)(2) ("A party may

11

object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). "[U]nder Fed. R. Civ. P. 56(c)(2), as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Wake v. Nat'l R.R. Passenger Corp.*, No. PWG-12-1510, 2013 WL 5423978, at * 1 (D. Md. Sept. 26, 2013) (unpublished) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013) (unpublished) ("Importantly, the objection [now] contemplated by the amended Rule is not that the material has not been submitted in admissible form, but that it cannot be.") (internal quotation marks omitted)). Here, Defendant simply argues that the challenged documents have not been authenticated, but does not argue that they are incapable of being presented in admissible form. The fact that the evidence may be authenticated defeats his argument. Thus, where Rule 56 does not require that evidence be presented in admissible form to be considered in conjunction with a motion for summary judgment, Defendant's motion is without merit. Accordingly, Defendant's motion to strike [DE-98] is denied.

## B.    Plaintiff's Motion to Amend Complaint [DE-96]

Plaintiff seeks to amend her complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, alleging that "new claims and situations have occurred." Mot. to Am. [DE-96] at 1. Plaintiff's proposed amended complaint [DE-96-1] contains three groups of claims: claims pursuant to 42 U.S.C. § 1983 (¶¶ 1-6); IDEA claims (¶¶ 7-11); and Section 504 retaliation claims (¶¶12-29). Prop. Compl. [DE-96-1] at 4-6. Defendant responded in opposition to the motion to amend, arguing that Plaintiff's motion to amend is untimely, Plaintiff has failed to show good cause pursuant to Rule 16 of the Federal Rules of Civil Procedure, and the presence of undue delay, prejudice, futility, and

12

bad faith requires denial of the motion to amend pursuant to Rule 15. Def.'s Resp. [DE-100] at 4-10. In reply, Plaintiff argues that she has done her best to follow all timelines, the motion to amend is not made in bad faith, and exhaustion is not required where the majority of the claims are now presented as section 1983 and retaliation claims. Pl.'s Reply [DE-102] at 1-4.

### *i.* **Legal Standards**

"Under the Federal Rules of Civil Procedure, a party who requests leave to amend after the date specified in the case management order must satisfy two prerequisites. The party must first demonstrate that there is some 'good cause' why the court should not adhere to the dates specified in the scheduling order." *Di Sciullo v. Griggs & Co. Homes*, No. 2:14-CV-18-FL, 2015 WL 470464, at *3 (E.D.N.C. Feb. 4, 2015) (unpublished) (citing Fed. R. Civ. P. 16(b); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). "If the party shows 'good cause' to the court's satisfaction, the party must then demonstrate that leave to amend is proper" pursuant to Rule 15. *Id.* (citation omitted).

The good cause provision of Rule 16(b)(4) does not focus on the prejudice to the non-movant or bad faith of the moving party, but rather on the moving party's diligence. *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997); *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (unpublished) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'") (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure Civ.* § 1522.2 (3d ed. 2010)). The

13

party moving to modify a scheduling order bears the burden of demonstrating the existence of good cause. *United States v. Cochran*, No. 4:12-CV-220-FL, 2014 WL 347426, at \*2 (E.D.N.C. Jan. 30, 2014) (unpublished) (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)). "Consistent with the diligence requirement, carelessness, inadvertence, mistake or neglect do not constitute good cause for amending the pleading after the date specified in the scheduling order." *Di Sciullo*, 2015 WL 470464, at \*3 (citations omitted). *Pro se* parties are subject to the same requirements as parties represented by counsel. *Buckner v. United Parcel Serv., Inc.*, No. 5:09-CV-411-BR, 2012 WL 1596726, at \*2 (E.D.N.C. May 7, 2012) (unpublished) (denying plaintiff's untimely motion to amend the complaint and recognizing plaintiff's *pro se* status but noting that "he has provided absolutely no explanation for his delay in filing the proposed amendment.").

When considering whether to grant a motion to amend, the court applies the following standard:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). Thus, as a general rule, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis & citation omitted). A court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (citations

14

omitted). Whether to grant leave to amend a complaint or answer is committed to the sound discretion of the trial court. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards*, 178 F.3d at 243-44. However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citation omitted). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (internal quotation marks omitted)). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences,

15

unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Additionally, pursuant to Rule 12(b)(1), a court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff, as the party opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does in fact exist. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

## *ii.* Plaintiff has Failed to Show Good Cause for the Untimely Motion to Amend

The Case Management Order in this case provided that "[a]ny motion for leave to join additional parties or to otherwise amend the pleadings shall be filed by **March 24, 2014.**" Case Mgmt. Order [DE-45] at 6. While Defendant's motion to dismiss was pending, the court granted Defendant's request to suspend the dispositive motions deadline and ordered that it would be re-established after resolution of the pending motions. Oct. 2, 2014 Order [DE-83]. Upon resolution of the pending motions, the court ordered the parties to confer and update the court as to whether any additional discovery would be needed and to propose new deadlines for case management. *Singletary*, 2015 WL 1125088, at \*10. Defendant responded, asserting that no additional discovery would be needed and proposing a new deadline for the filing of potentially dispositive motions. [DE-90]. Defendant attached a letter sent to Plaintiff [DE-90-1], seeking input on case management issues, but received no response and Plaintiff did not file an individual report with the court

16

regarding case management issues. The court then set a deadline of May 20, 2015 for the filing of any dispositive motions. Apr. 14, 2015 Text Order. The instant motion to amend was filed on June 15, 2015, approximately fifteen (15) months after the deadline for filing motions to amend had expired. Mot. to Am. [DE-96].

In the motion to amend, Plaintiff simply states that since the initial filing of the case, "new claims and situations have occurred." *Id.* at 1. However, Plaintiff did not propose any new deadlines to the court for filing motions to amend the pleadings, despite being expressly given an opportunity to propose new case management deadlines. Additionally, Plaintiff failed to seek an extension of time for filing a motion to amend. Given that the instant motion to amend was filed approximately fifteen (15) months after the deadline to file such motions expired and given that Plaintiff failed to seek an extension of time even when expressly given an opportunity to alert the court as to what case management deadlines needed to be re-established going forward, the undersigned cannot find that Plaintiff acted with the requisite diligence to establish good cause. *See Cook*, 484 F. App'x at 815. Further, despite Plaintiff's *pro se* status, she is still subject to the same procedural rules as parties who are represented by counsel. *See Buckner*, 2012 WL 1596726, at *2. Where Plaintiff has failed to show good cause for her failure to meet the case management deadlines, her motion to amend [DE-96] is denied.

### *iii.* **Plaintiff's Proposed Amendments would be Futile**

Even if Plaintiff had shown good cause for her failure to comply with the deadline for filing motions to amend the pleadings set in the Case Management Order, Plaintiff's motion to amend would be denied as futile under Rule 15 where the amended complaint would not survive a motion to dismiss. *Perkins*, 55 F.3d at 917. Plaintiff's proposed amended complaint [DE-96-1] contains

17

three groups of claims: claims pursuant to 42 U.S.C. § 1983 (¶¶ 1-6); IDEA claims (¶¶ 7-11); and Section 504 retaliation claims (¶¶12-29). Prop. Compl. [DE-96-1] at 4-6. The undersigned will address each group of claims in turn.

### a.   Section 1983 Claims

Paragraphs 1-6 of Plaintiff's proposed amended complaint set forth claims pursuant to 42 U.S.C. § 1983. Prop. Compl. [DE-96-1] at 4 ¶¶ 1-6. Generally, Claimant alleges that Defendant, along with other entities and individuals, acted under color of state law to deprive N.M.M. of a FAPE; Defendant deprived Plaintiff of her freedom of speech through a retaliatory investigation; Defendant acted under color of law to harm N.M.M. in various ways; Defendant conspired to deprive Plaintiff of her rights under the IDEA; and Defendant conspired and filed a false neglect claim against Plaintiff due to a prior lawsuit. *Id.*

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). The first step in any such claim is to identify the specific constitutional rights allegedly infringed. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140. Plaintiff cannot premise section 1983 claims on general IDEA violations, and has thus failed to identify the required constitutional violation in order to state a claim under section 1983. *Sellers v. Sch. Bd. of Mannassas, Va.*, 141 F.3d 524, 529-31 (4th Cir. 1998) (holding that plaintiffs may not sue under section 1983 for statutory violations of the IDEA). Additionally, Plaintiff has failed to identify a constitutional violation underlying her claim that Defendant conspired to file a false claim of neglect against her. These claims thus fail as a matter of law and would be subject to dismissal pursuant to Rule 12(b)(6). Where the proposed amended claims would not survive a motion to dismiss, the motion to amend

18

should be denied as futile. *Perkins*, 55 F.3d at 917. Further, Plaintiff's claim of retaliatory investigation based on her exercise of freedom of speech fails as a matter of law. *Nance v. Ingram*, No. 7:14-CV-9-FL, 2015 WL 5719590, at \*4-5 (E.D.N.C. Sept. 29, 2015) (unpublished) (holding that retaliatory investigations are not constitutional violations in the First Amendment context and cannot support a section 1983 claim). The section 1983 claim based on retaliatory investigation in response to Plaintiff's exercise of her First Amendment rights also would be subject to a Rule 12(b)(6) dismissal and should thus be denied as futile. Accordingly, Plaintiff's motion to amend as to her section 1983 claims is denied as futile.

### b.    IDEA Claims

Paragraphs 7-11 of Plaintiff's proposed amended complaint set forth claims pursuant to the IDEA. Prop. Compl. [DE-96-1] at 4-5 ¶¶ 7-11. These claims appear to be a re-wording on Plaintiff's existing IDEA claims as contained in the Second Amended Complaint. [DE-49]. Additionally, Claim Paragraph 8 contains an implementation claim that has already been dismissed by this court. *Compare* Prop. Compl. [DE-96-1] at 4 ¶ 8 ("Therapist from CCS refused to follow measures of progress created for the goals on the IEP's."), *with Singletary*, 2015 WL 1125088, at \*9 (dismissing Claim Paragraph 2 from the Second Amended Complaint, where Plaintiff alleged that Defendant failed to follow N.M.M.'s IEP, because no finding was made or decision rendered on this issue during the state administrative proceedings below).

### c.    Section 504 Retaliation Claims

Paragraphs 12-29 of Plaintiff's proposed amended complaint set forth claims pursuant to section 504 of the Rehabilitation Act. Prop. Compl. [DE-96-1] at 5-6 ¶¶ 7-11. Plaintiff alleges generally that Defendant retaliated against N.M.M. for Plaintiff's advocacy on N.M.M.'s behalf. *Id.*

19

Further, Plaintiff states that "[s]ince the due process filed [on] May 3, 2012, several acts of retaliation have occurred." Mot. to Am. [DE-96] at 3. Plaintiff also argues that since she has revoked IDEA services for N.M.M., she is not required to have exhausted these claims. *Id.* at 4. However, this court has held that retaliation claims must be administratively exhausted prior to being brought in federal court.

> In addition, although the Fourth Circuit has not addressed whether retaliation claims are exempt from the exhaustion requirement, other courts have addressed squarely plaintiff's contention, answering in the negative. *See M.T. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158-59 (11th Cir. 2006); *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000). The court finds this position persuasive in light of the purposes of administrative review provided by the IDEA. *See Lorsson*, 773 F.3d at 514-15. *See generally* 20 U.S.C. § 1415.

*Singletary*, 2015 WL 1125088, at \*7-8 (overruling Plaintiff's objections and dismissing retaliation claims where Plaintiff failed to exhaust her administrative remedies). Plaintiff's argument that she was not required to exhaust her administrative remedies as to these retaliation claims is thus without merit. Further, it does not appear to be disputed that Plaintiff has not administratively exhausted these retaliation claims. Accordingly, where Plaintiff's failure to exhaust her retaliation claims deprives the court of subject matter jurisdiction over these claims such that they would be subject to a Rule 12(b)(1) dismissal, Claimant's motion to amend as to these claims is denied as futile.

## C.     Defendant's Motion for Summary Judgment [DE-92]

Defendant seeks summary judgment on all remaining claims before the court, arguing that there are no genuine issues of material fact and it is entitled to judgment as a matter of law, and that this court should affirm the decision of the SRO. Def.'s Mot. [DE-92] at 4-19. Specifically, Defendant argues that it is entitled to judgment as a matter of law as to Claim Paragraph 2 because evidence about the June 22, 2011 IEP meeting was properly excluded during the state administrative

20

proceedings; it is entitled to judgment as a matter of law as to Claim Paragraph 3 because the evidence of record supports the ALJ's determination that learning to ride an adaptive tricycle was not an appropriate educational goal for N.M.M.; and it is entitled to judgment as a matter of law as to Claim Paragraph 10 because Plaintiff failed to exhaust her administrative remedies as to this claim, depriving the court of jurisdiction to consider it. *Id.* Plaintiff responded in opposition, arguing that summary judgment should not be granted in favor of Defendant. Pl.'s Resp. [DE-95].

### *i.* **Legal Standards**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When a party files a motion for summary judgment challenging a state administrative ruling under the IDEA, the motion 'may more aptly be described . . . as a motion for summary adjudication.'" *E.L. ex rel. G.L. v. Chapel Hill-Carrboro Bd. of Educ.*, 975 F. Supp. 2d 528, 536 (M.D.N.C. 2013) (quoting *Hanson ex rel. Hanson v. Smith*, 212 F. Supp. 2d 474, 480-81 (D.Md. 2002) (citation omitted)), *aff'd*, 773 F.3d 509 (4th Cir. 2014).

"The IDEA requires all states receiving federal education funds to provide disabled school-children with a 'free appropriate public education' ("FAPE")." *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 319 (4th Cir. 2009) (citation omitted). "A FAPE 'consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction.'" *Id.* (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982) (internal quotation marks omitted)). "[A] FAPE must be reasonably calculated to confer some educational benefit on a disabled child."

21

*M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 526 (4th Cir. 2002) (citing *Rowley*, 458 U.S. at 207). "Such an educational benefit must be provided to a disabled child in the least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children." *Id.* (citation omitted).

"The IDEA does not, however, require a school district to provide a disabled child with the best possible education." *Id.* (citing *Rowley*, 458 U.S. at 192) (noting that the IDEA provides very little by way of substantive standards in determining whether a child is receiving a FAPE). Further, "once a FAPE is offered, the school district need not offer additional educational services." *Id.* at 526-27 (citing *Matthews v. Davis*, 742 F.2d 825, 830 (4th Cir. 1984)). In other words, "while a state must provide specialized instruction and related services sufficient to confer some educational benefit upon the handicapped child, . . . [IDEA] does not require the furnishing of every special service necessary to maximize each handicapped child's potential." *Id.* at 527 (citing *Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997) (subsequent citation and internal quotations omitted)). While a state need not provide the best education possible under the IDEA, the academic advancement must be more then trivial. *See Hall ex rel. Hall v. Vance Cnty. Bd. of Educ.*, 774 F.2d 629, 636 (4th Cir. 1985). The Fourth Circuit recently held that despite the 1997 and 2004 amendments to the IDEA, the *Rowley* standard still applies. *O.S. v. Fairfax Cnty. Sch. Bd.*, 804 F.3d 354, 358-60 (4th Cir. 2015) ("the standard remains the same as it has been for decades: a school provides a FAPE so long as a child receives some educational benefit, meaning a benefit that is more than minimal or trivial, from special instruction and services.").

"A school provides a FAPE by developing an IEP [Individualized Education Plan] for each disabled child." *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty.*, 516 F.3d 254, 257 (4th Cir.

22

2008). "An appropriate IEP must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." *M.M.*, 303 F.3d at 527 (citation omitted). An IEP must ultimately be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. The IDEA requires that the parents or guardian of a handicapped child be permitted to participate in discussion relating to the evaluation and education of the disabled child. 20 U.S.C. § 1415(b). The IDEA also requires that the parents of a disabled child be notified by the school district of any prospective change to their child's IEP. *M.M.*, 303 F.3d 527.

"Congress incorporated [into the IDEA] an elaborate set of what it labeled 'procedural safeguards' to insure the full participation of the parents and proper resolution of substantive disagreements" with respect to the provision of a FAPE. *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985). Those procedural safeguards permit parents to present complaints regarding the provision of a FAPE. 20 U.S.C. § 1415(b)(6)(A). When a parent or guardian objects to the identification, placement, or evaluation of his or her child or the provision of a FAPE, the parent or guardian has "a right to an impartial due process hearing," to be conducted by the state education agency as determined by state law, to evaluate the disabled student's IEP. *Gadsby v. Grasmick*, 109 F.3d 940, 944 (4th Cir. 1997); *see also* 20 U.S.C. § 1415(f). At that hearing, the parent has the right to be accompanied by counsel, to present evidence and cross-examine witnesses, and to receive a written record of the hearing and the decision made. 20 U.S.C. § 1415(h)(1)-(4).

23

North Carolina has a two-tiered administrative review system. *Cone v. Randolph Cnty. Bd. of Educ.*, 657 F. Supp. 2d 667, 670 (M.D.N.C. 2009). The due process hearing is conducted by an ALJ selected by the North Carolina Office of Administrative Hearings. *Id.* "Parties aggrieved by the findings of the ALJ decision may appeal to the State Board of Education, which will assign a State Review Officer ("SRO") knowledgeable about special education to review the ALJ's findings and decision." *Id.* The party dissatisfied with the SRO's decision may file a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). In North Carolina, a plaintiff seeking to appeal the SRO's decision to federal court must file a civil action in federal court within 90 days of the SRO's decision. *Id.*; N.C. Gen. Stat. § 115C-109.9(d). A plaintiff must exhaust her administrative remedies before pursuing a civil action in court. *E.L.*, 773 F.3d at 513-14; *M.M.*, 303 F.3d at 536 (describing three narrow exceptions to the exhaustion requirement: (1) when pursuing the administrative process would be futile, (2) when the school board failed to inform the parents of their administrative rights, and (3) when pursuing the administrative process would have severely harmed the child).

There are two types of violations under the IDEA—procedural violations and substantive violations. Substantive violations occur when there is a deficiency in what the school system offers as services for the child, thereby preventing the child from receiving a FAPE. *See A.R. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 n.7 (4th Cir. 2007). The denial of a parent's "opportunity to participate meaningfully" in the creation of the child's IEP is an example of a procedural violation of the IDEA. *Knable ex rel. Knable v. Bexlay City Sch. Dist.*, 238 F.3d 755, 767-70 (6th Cir. 2001). However, a procedural violation does not necessarily mean the child failed to receive a FAPE and that relief under the IDEA is warranted. *DiBuo ex rel. DiBuo v. Bd. of Educ. of Worcester Cnty.*, 309 F.3d 184, 190 (4th Cir. 2002). Therefore, if a procedural defect exists, the

24

court must "assess whether it resulted in the loss of an educational opportunity for the disabled child, or whether, on the other hand, it was a mere technical contravention of the IDEA." *M.M.*, 303 F.3d at 533-34 (citing *Gadsby*, 109 F.3d at 956). A school district meets its obligations under the IDEA "if a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA." *Id.* at 534 (citing *Burke Cnty. Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990)).

In determining whether the child received a FAPE consistent with the IDEA, the court must review the administrative record as the finder of fact and show deference to findings of the state administrative agency. *See Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 385 (4th Cir. 2000). Specifically, "the IDEA requires that a reviewing court (1) receive the record of the administrative proceeding, (2) hear additional evidence at the request of a party, and (3) base its decision on the preponderance of the evidence." *E.L.*, 773 F.3d at 516-17 (citing 20 U.S.C. § 1415(i)(2)(C)). The court conducts "modified de novo review, giving due weight to the underlying administrative proceedings." *O.S.*, 804 F.3d at 360 (internal quotations omitted). "While the court must make an independent determination [of] whether the school complied with the IDEA, the hearing officer's factual findings are 'considered prima facie correct.'" *Id.* (quoting *E.L.*, 773 F.3d at 517). "In a two-tiered system, such as North Carolina's, a review officer's decision is also entitled to deference unless it departs from the 'normal process of fact-finding.'" *E.L.*, 773 F.3d at 517 (quoting *G. ex rel. R.G. v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 303 (4th Cir. 2003)).

> A district court determines whether a school provided a FAPE based on the preponderance of the evidence. It must afford great deference to the judgment of education professionals in implementing the IDEA, because the IDEA does not allow federal courts to substitute their own notions of sound educational policy for those of local school authorities. Finally, the party seeking relief bears the burden of proof.

*O.S.*, 804 F.3d at 360 (internal quotation marks and citations omitted).

25

*ii.* **Claim Paragraph 10**

Claim Paragraph 10 provides as follows:

[CCS] retaliated against the child due to the parent filing a due process in order to fight for the child's rights. [CCS] denied the child N.M.M. a new IEP that was created on May 10, 2012, because the plaintiff filed a lawsuit. On August 8, 2012, the petitioner ask[ed] to agree with the school and put her in a regular classroom (her new LRE), the county stated no, not until the lawsuit is over.

Second Am. Compl. [DE-49] at 9. Defendant argues that it should be granted judgment as to this claim for three reasons: (1) Plaintiff failed to exhaust her administrative remedies as to this claim; (2) Plaintiff never asked CCS to implement the May 10, 2012 IEP as written, but instead asked for selective changes; and (3) CCS denied Plaintiff's requests for changes to the stay-put placement for the legitimate, non-discriminatory reason that her requests were not educationally appropriate. Def.'s Mot. [DE-92] at 12-17. In response, Plaintiff argues that this claim was part of a due process petition filed in August 2012 (the Second Administrative Case) that was heard at both tiers of the state administrative review process and thus the claim is fully exhausted. Pl.'s Resp. [DE-95] at 8-10.

This court has held that retaliation claims must be administratively exhausted prior to being brought in federal court. *Singletary*, 2015 WL 1125088, at *7-8 (overruling Plaintiff's objections and dismissing retaliation claims where Plaintiff failed to exhaust her administrative remedies). Further, the court has already determined that Plaintiff has failed to exhaust her administrative remedies as to claims arising out of the Second Administrative Case. *Id.* at *10 ("Because plaintiff's August 25, 2012, due process complaint was dismissed, she has not been aggrieved by 'findings' or 'decisions' made on the merits of the claims contained within that complaint."); *see M.E. ex rel. C.E. v. Buncombe Cnty. Bd. of Educ.*, 72 F. App'x 940 (unpublished) (per curiam) ("because the ALJ

incorrectly dismissed M.E.'s claim as untimely, the ALJ did not consider the merits of her claim. Consequently, there were no administrative 'findings or decision' regarding the merits of M.E.'s claim for the district court to review and the district court did not have jurisdiction"). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). While there are three narrow exceptions to the exhaustion requirement, *M.M.*, 303 F.3d at 536, Plaintiff does not argue that any of those exceptions apply to the present case.

Accordingly, where Plaintiff has failed to exhaust her administrative remedies as to Claim Paragraph 10, the court is without jurisdiction to consider that claim.[5] It is thus recommended that Claim Paragraph 10 be dismissed for lack of jurisdiction.

### *iii.* **Claim Paragraph 2**

The remaining portion of Claim Paragraph 2 provides as follows:

> Under IDEA, children are entitled to an Individualized plan, not a one size fits all plan. When the child entered CCS, she was set up for a one size fits all plan[]. Her goals were pre-written out, the evidence is shown on audio's [sic] that the [J]udge Selina Brooks would not allow in the due process due to being unknowledgeable about IDEA. Selina Brooks did not allow the evidence to be played by providing an incorrect statute that the law says . . . anything before a resolution meeting cannot enter the court. When the evidence I have is played in court, we will hear that this document was already planned before the parent had arrived and that voting had also occurred.

Second Am. Compl. [DE-49] at 6-7. Defendant argues that it should be granted judgment as to this claim because the SRO properly upheld the ALJ's exclusion of evidence, as Plaintiff signed a

---

[5] Having determined that the court is without jurisdiction to consider this claim, the undersigned will not reach the remainder of Defendant's arguments.

settlement agreement following a resolution meeting agreeing to dismiss the claims at issue with prejudice. Def.'s Mot. [DE-92] at 6-9. In response, Plaintiff argues that under the IDEA, evidence about resolution meetings is not excluded in court, the due process petition did not list polling or voting, and the settlement did not list voting. Pl.'s Resp. [DE-95] at 6-7. Additionally, Plaintiff states that while she agreed to "a settlement that included increased therapy, a one on one and an IEP meeting within 45 days, the only thing that it did state is that the due process would be dismissed with prejudice, which no one explained to her what this meant." *Id.* at 6. As an initial matter, the undersigned notes the voluntariness of the settlement agreement has not been raised before during the pendency of this case and may not be asserted in this posture. *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (unpublished); *Swann v. Source One Staffing Sols.*, 778 F. Supp. 2d 611, 622 (E.D.N.C. Feb. 24, 2011).

Plaintiff was unsatisfied with the first IEP developed by CCS for N.M.M. at an IEP meeting held on June 22, 2011, and filed a due process petition against CCS on June 23, 2011. ALJ Decision [DE-7-] at 4 ¶ 7. The parties held a resolution meeting to address the due process petition on June 29, 2011. *Id.* ¶ 8. In the contested case petition, Plaintiff argued that she was not part of the IEP team and voting was inappropriate when making IEP decisions, and generally challenged the services provided for N.M.M . [DE-95-3] at 1-2. The parties reached a resolution agreement, in which Plaintiff agreed to dismiss the due process action with prejudice, and the agreement provided for increased therapy services for N.M.M. and an extra assistant for N.M.M.'s class for part of the school day. ALJ Decision [DE-70] at 5 ¶¶ 8, 10; [DE-95-3] at 4-5.

At the administrative hearing, Plaintiff attempted to introduce a recording of the June 22, 2011 IEP meeting. Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 38. The ALJ determined that, because of the

28

resolution agreement dismissing the due process petition with prejudice, "issues relating to the development and appropriateness of the June 2011 IEP were settled and could not be litigated" in the present action. ALJ Decision [DE-70] at 9 ¶¶ 3-4. The ALJ thus did not allow Plaintiff to introduce the recording of the June 22, 2011 IEP meeting and did not allow Plaintiff to elicit testimony about what took place at the June 22, 2011 IEP meeting. Hr'g Tr. Vol. 1 Pt. 1 [DE-65] at 38-42. The SRO also found that Plaintiff dismissed her due process petition related to the June 22, 2011 IEP meeting with prejudice at the resolution meeting. SRO Decision [DE-71] at 5 ¶¶ 9-10. The SRO concluded that the ALJ correctly excluded the audio of the June 22, 2011 IEP meeting, stating that that "[t]he June 29, 2011 Resolution Agreement, relating to a previous due process petition, foreclosed [Plaintiff's] arguments related to IEP claims prior to that time. She agreed to an IEP and has made no arguments concerning the implementation of that IEP or Resolution Agreement." *Id.* at 11 ¶ 8.

Despite Plaintiff's argument to the contrary, the due process petition contained claims that Plaintiff was not a part of the IEP team and that voting had occurred. [DE-95-3] at 1 ("the parent was not included as part [of] the IEP team"); *id.* at 2 ("The parent needs to be a part of the IEP team, instead of having a majority rule out during IEP meetings. Parent feels that voting is inappropriate in making IEP decisions."). At the resolution meeting on June 29, 2011, the parties reached an agreement whereby Plaintiff agreed to dismiss her due process petition with prejudice in exchange for increased services for N.M.M. *Id.* at 4-5 ("By entering into this agreement, [Plaintiff] agrees that the pending due process case be dismissed with prejudice."). Although Plaintiff argues that the settlement did not list voting, that argument is without merit where the due process petition listed

29

voting and Plaintiff agreed as part of the settlement agreement to dismiss the due process petition with prejudice.

Regardless of whether federal law or North Carolina law is applied, the result is the same in the present case. "It is well established that dismissals with prejudice—including those resulting from settlement agreements or consent decrees—are treated as final judgments on the merits for the purposes of res judicata." *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906, 914 (D. Md. 2009); *accord Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1984) ("a voluntary dismissal with prejudice is a valid, final judgment on the merits"); *Caswell Realty Assocs. I, L.P. v. Andrews Co.*, 128 N.C. App. 716, 720, 496 S.E.2d 607, 610 (1998) ("A dismissal with prejudice is an adjudication on the merits and has res judicata implications."). According to the Fourth Circuit, res judicata applies to bar claims asserted in a subsequent suit after a previous adjudication when three requirements are met: "(1) The first suit must have concluded in a final judgment on the merits; (2) The second suit must involve the assertion of claims by persons who were parties or in privity with parties in the first suit; and (3) The claims asserted in the second suit must be based on the same cause of action as the first suit." *Kenny*, 802 F.2d at 669; *accord Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 84, 609 S.E.2d 259, 262 (2005) (under North Carolina law, "[i]n order to successfully assert the doctrine of res judicata, a litigant must prove the following essential elements: (1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits."). Further, "decisions regarding the admission and exclusion of evidence are peculiarly within the province of the district court, not to be reversed on appeal absent an abuse of discretion." *Martin v. Deiriggi*, 985 F.2d 129, 137 (4th Cir. 1992) (citation omitted); *accord Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747,

30

753 (2006) (citation omitted) ("On appeal, the standard of review of a trial court's decision to exclude or admit evidence is that of an abuse of discretion").

Here, having dismissed with prejudice her due process petition containing claims that voting had occurred at the June 22, 2011 IEP meeting, Plaintiff may not attempt to re-litigate those issues due to the doctrine of res judicata. The settlement agreement dismissing Plaintiff's due process petition with prejudice acts as a final adjudication on the merits, the issue of voting at the June 22, 2011 IEP meeting is the same in both actions, and the parties are identical in both actions. *Kenny*, 802 F.2d at 669; *Moody*, 169 N.C. App. at 84, 609 S.E.2d at 262. Accordingly, where any claims related to voting taking place at the June 22, 2011 IEP meeting would be barred by res judicata, the undersigned cannot find that the ALJ's decision to exclude the audio recording of the June 22, 2011 IEP meeting was an abuse of discretion. *Martin*, 985 F.2d at 137; *Brown*, 176 N.C. App. at 505, 626 S.E.2d at 753. The undersigned thus recommends that summary judgment be granted in favor of Defendant as to the remaining portion of Claim Paragraph 2.

### *iii.* **Claim Paragraph 3**

The remaining portion of Claim Paragraph 3 provides as follows: "The parent was belittled by being told . . . that it wasn't worth a fight to teach her to ride a bike." Second Am. Compl. [DE-49] at 7; *Singletary*, 2015 WL 1125088, at *10 (Claim Paragraph 3, in addition, contains allegations that plaintiff was humiliated by defendant's refusal to teach N.M.M. to ride an assistive tricycle. This issue was addressed by the ALJ and thus properly is before this court."). Defendant argues that it is entitled to judgment on this claim because the evidence presented at the hearing demonstrated that working on riding an adaptive tricycle was not an appropriate educational goal. Def.'s Mot. [DE-92] at 9-12. In response, Plaintiff argues that she had never been informed that there were

31

prerequisites for riding a tricycle at school as part of the curriculum, N.M.M. was not given the opportunity to try an adaptive tricycle, and CCS discriminated against N.M.M. based on her disability in not providing her an adaptive tricycle. Pl.'s Resp. [DE-95] at 2-6.

As to the adaptive tricycle, the ALJ determined the following:

> Failure to Provide Adaptive Equipment and/or Assistive Technology. The only issue raised relating to this subject was whether the school-based therapists should have been working with [N.M.M.] on riding an adaptive tricycle and whether the school should have provided [N.M.M.] an appropriate adaptive tricycle at school. The evidence was compelling that, during the 2011-12 school year, [N.M.M.] did not possess the prerequisite head and trunk control to make riding an adaptive tricycle at school an appropriate goal.

ALJ Decision [DE-70] at 11 ¶ 17. The SRO agreed, concluding that "[t]he evidence was compelling that, during the 2011-12 school year, [N.M.M.] did not possess the prerequisite head and trunk control to make riding an adaptive tricycle at school an appropriate goal." SRO Decision [DE-71] at 12 ¶ 15.

The ALJ considered the evidence presented at the hearing, including (1) the testimony of Sheldon, the physical therapist who worked with N.M.M. during the 2011-12 school year, who stated that N.M.M. needed improved head and trunk control before providing an adaptive tricycle would be appropriate, N.M.M. was not the only child in her class who was not provided a tricycle, the focus of school-based physical therapy was improving N.M.M.'s positioning for the learning environment, N.M.M. might be able to pedal a tricycle but it would be using abnormal muscle tone N.M.M. should not be using, Sheldon had exchanged emails with Plaintiff about different kinds of adaptive tricycles, and the video exhibit of N.M.M. riding a tricycle at home showed that N.M.M. was not ready to begin working on riding an adaptive tricycle from a physical therapy standpoint, Hr'g Tr. Vol. 1 Pt. 2 [DE-66] at 192-94, 196, 233-34; (2) the testimony of Aul, the physical therapist and director of

32

CCS's exceptional children's department, who testified that N.M.M. did not have the appropriate head and trunk control in order to be functional on a tricycle and working on riding an adaptive tricycle could have compromised the progress N.M.M. was making in other areas, such as sitting, Hr'g Tr. Vol. 2 Pt. 1 [DE-67] at 284; (3) the audio exhibit of the March 22, 2012 IEP meeting where Sheldon stated that she and Aul had agreed that the focus should not be on the tricycle at that time and that she would like to see N.M.M. ride a tricycle out to the playground with her friends, but she could not do so at that time, Hr'g Tr. Vol. 2 Pt. 1 [DE-67] at 202-03; (4) the testimony of Howington, N.M.M.'s one-on-one aide who testified that along with the help of another teacher's assistant, she pushed N.M.M. along on a non-adaptive tricycle at one point; (5) the testimony of Plaintiff that N.M.M. has ridden adaptive tricycles at Duke, there are many adaptive tricycles available for children, learning to ride a tricycle was part of the curriculum goals for children at N.M.M.'s age, and that N.M.M. had pedaled a tricycle for the first time in March 2012, Hr'g Tr. Vol. 2 Pt. 2 [DE-68] at 335, 341-42, 344; and (6) the video clips of N.M.M. on a non-adaptive tricycle at home, Pl.'s Video Number 1.

Considering this evidence, both the ALJ and the SRO concluded that during the 2011-12 school year, N.M.M. did not have the prerequisite head and trunk control to make riding an adaptive tricycle at school an appropriate goal, although the ALJ determined this was a substantive claim under IDEA and the SRO determined that it was a procedural claim. *Compare* ALJ Decision [DE-70] at 11 ¶ 17, *with*, SRO Decision [DE-71] at 12 ¶ 15. Under either standard, Defendant is entitled to judgment on this claim. Whether an alleged IDEA violation is procedural or substantive, the court must ultimately consider whether a child received a FAPE. *See A.R.*, 484 F.3d at 679 n.7 (substantive violations occur when there is a deficiency in what the school system offers as services

33

for the child, thereby preventing the child from receiving a FAPE); *M.M.*, 303 F.3d at 533-34 (in

considering a procedural IDEA violation, if a child received or was offered a FAPE in spite of a

technical violation, the school district has met its duty under the regulations). The factual findings

of the hearing officer are considered to be prima facie correct, and the review officer's decision in

a two-tiered administrative system is also entitled to deference unless the SRO has departed from

the normal process of fact-finding. *O.S.*, 804 F.3d at 360; *E.L.*, 773 F.3d at 517.

> A district court determines whether a school provided a FAPE based on the preponderance of the evidence. It must afford great deference to the judgment of education professionals in implementing the IDEA, because the IDEA does not allow federal courts to substitute their own notions of sound educational policy for those of local school authorities. Finally, the party seeking relief bears the burden of proof.

*O.S.*, 804 F.3d at 360 (internal quotation marks and citations omitted). In that case,

> [i]n addition to evaluating O.S.'s progress, the hearing officer considered whether additional accommodations should have been included in O.S.'s second grade IEP. The hearing officer credited unrebutted testimony that a one-on-one aide was only necessary when a student required help with 'even the basic needs of the day.' The hearing officer found no evidence that O.S. needed that sort of support[.]

*Id.* at 361. The court thus stated that "[g]iven that the record supports the hearing officer's findings,

we cannot conclude as a matter of law that the School Board did not provide O.S. with a FAPE. To

do so would ignore our obligation to give due weight to the hearing officer's findings, and to defer

to the judgment of professional educators." *Id.*

> Similarly, here,

> [t]he testimony from the educators and therapists demonstrated that the goals discussed in the hearing were appropriate because they addressed [N.M.M.'s] strengths and weaknesses. Her school-based occupational therapist, physical therapist, and speech therapist testified that [N.M.M.] made good progress throughout the year. There was no credible testimony challenging either individual therapy goals or [N.M.M.'s] progress.

34

ALJ Decision [DE-70] at 12 ¶ 23. Having considered the record evidence, the undersigned agrees and determines that the preponderance of the evidence shows that N.M.M. received a FAPE. *See O.S.*, 804 F.3d at 360 ("a school provides a FAPE so long as a child receives some educational benefit, meaning a benefit that is more than minimal or trivial, from special instruction and services."). The evidence demonstrated that at the relevant time, N.M.M. did not possess the required trunk and head control to make working on riding an adaptive tricycle an appropriate educational goal. Here, as in *O.S.*, given that the record evidence supports the hearing officer's findings, the undersigned cannot conclude as a matter of law that CCS did not provide N.M.M. with a FAPE, even in light of the fact that learning to ride an adaptive tricycle was a curriculum goal for children her age and she was not provided an adaptive tricycle, because to "do so would ignore [the court's] obligation to give due weight to the hearing officer's findings, and to defer to the judgment of professional educators." *O.S.*, 804 F.3d at 361. Accordingly, the undersigned recommends that summary judgment be granted in favor of Defendant as to the remaining portion of Claim Paragraph 3.

## CONCLUSION

For the foregoing reasons, Defendant's motion to strike [DE-98] and Plaintiff's motion to amend [DE-96] are DENIED, and it is recommended that Defendant's motion for summary judgment [DE-92] be GRANTED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 26, 2015** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the

35

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** ***See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED and ORDERED, this the 12 day of February 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

36